**STATE, ex rel., Robert James WALKER petitioner, Appellant,**

**v.**

**RAMSEY COUNTY DISTRICT COURT, Respondent.**

**No. C9–84–2192.**

Court of Appeals of Minnesota.

May 21, 1985.

Douglas W. Thomson, St. Paul, for appellant.

Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

Petitioner Robert James Walker appeals the trial court's order discharging his writ of habeas corpus. We reverse.

## FACTS

On May 20, 1982, Robert James Walker (petitioner) ordered a rifle from New Mexico gunsmith Dale Goens. Petitioner had purchased guns three previous times from Goens. Petitioner sent a $750 deposit to Goens, who completed the rifle in July. Goens agreed to ship the rifle to petitioner for inspection prior to final payment. Petitioner was not satisfied with part of the gun, so he shipped metal portions of the rifle back to New Mexico. Goens repaired it and sent it back to petitioner. Petitioner was still not satisfied, and returned the "barrelled action" back to Goens for work on the "box magazine." Again, after repair that part was returned to petitioner. The second return by Goens to petitioner took place in March of 1984. Since that time, Goens has not received the balance for the rifle, which cost $3,795.

In May 1984, a grand jury for Bernalillo County, New Mexico, returned an indictment in which petitioner was accused in three alternative counts, of larceny by fraud, embezzlement, and unlawful removal of encumbered property, all counts involving property of over $2,500 in value. All three counts had as their lynchpin appellant's having in his possession the rifle and not having made full payment.

On June 11, 1984, the assistant district attorney for Bernalillo County, New Mexico, asked the New Mexico governor to issue a requisition to the governor of Minnesota for Walker's extradition. The application correctly stated that the charges in the indictment were the result of an act committed in Minnesota, "intentionally resulting in a crime in the State of New Mexico." The district attorney's application also stated that the requisition was not sought to collect a debt or enforce a civil remedy.

The requisition requested by the New Mexico governor *incorrectly stated* that petitioner "was present in [New Mexico] at the time of commission of said crime and thereafter fled from the justice of this State, and has taken refuge in the State of Minnesota."

The rendition warrant dated June 18, 1974 *incorrectly stated* petitioner "stands charged ... with the crimes of fraud, embezzlement, unlawful removal of encumbered property committed in said state and that the said fugitive has taken refuge in the State of Minnesota."

Respondent does not dispute that the requisition and rendition warrant contained incorrect statements of fact. Respondent agrees that petitioner was never in the State of New Mexico and his only contact with that state and the gunsmith was over the phone and through the mails. Petitioner sought relief by writ of habeas corpus, which was denied by the district court of Ramsey County.

## ISSUE

Did the trial court err in discharging the writ of habeas corpus when the warrant and the demand for extradition were not in proper form?

## ANALYSIS

Chapter 629 of Minnesota Statutes defines the terms under which extradition may occur. Under Minn.Stat. 629.03 (1984), there must be a written allegation that the accused was in the demanding state at the time of the commission of the alleged crime and that he fled from the state thereafter.

Under an alternative provision, the Minnesota governor may surrender any person in Minnesota who is charged with committing an act in Minnesota or in a third state with intent to commit a crime in the demanding state. The provision applies even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom. *See* Minn.Stat. § 629.06 (1982).

The Minnesota Supreme Court has outlined the prerequisites to extradition:

"(a) Are the demand for extradition and the warrant issued in response to it in proper form?

(b) Is the criminal charge pending in the requisitioning state adequate to support extradition?

(c) Is the person seeking relief from extradition proceedings identical with the person named therein?

(d) Was the person confined by virtue of the extradition warrant actually present in the state where the criminal act was committed at the time thereof or, if not, did he perform an act outside of the requisitioning state intentionally resulting in a crime in such state?"

*State ex rel. Wagner v. Hedman,* 292 Minn. 358, 360, 195 N.W.2d 420, 421–22 (1972), (quoting *State ex rel. Gegenfurtner v. Granquist,* 271 Minn. 207, 208, 135 N.W.2d 447, 448 (1965)).

▬ Appellant argues that the form of the rendition warrant and the demand for extradition are improper, in that (a) was not satisfied. We agree and find appellant's writ of habeas corpus should issue.

Although the district attorney correctly recited in her requisition application that appellant had committed an act in Minnesota "intentionally resulting in a crime" in New Mexico, the rendition warrant itself and demand for extradition were issued incorrectly.

The extradition request by the New Mexico Governor to the Minnesota Governor stated that appellant "was present in this State at the time of commission of said crime and thereafter fled from the justice of this State, and has taken refuge in the State of Minnesota." The rendition warrant also incorrectly stated that appellant "stands charged" with the crimes of fraud, embezzlement, and unlawful removal of encumbered property each committed in New Mexico and that the fugitive took refuge in Minnesota.

The Minnesota Supreme Court has stated that an error of this type is fatal to extradition:

"Where, as here, the person is described in the demand for extradition as a fugitive from justice rather than as a person charged with 'committing an act in this state, or in a third state, intentionally resulting in a crime in the state, whose executive authority is making the demand,' the presence of the person in the demanding state at the time of the alleged offense was committed is a vital condition to the validity of the extradition proceedings."

*State ex rel. Wagner,* 292 Minn. at 361, 195 N.W.2d at 422 (cites omitted.)

The Supreme Court of the State of South Dakota addressed a similar issue in *Ex Parte Kaufman,* 73 S.D. 166, 39 N.W.2d 905 (1949). The Governor of South Dakota was served by the Governor of California with extradition papers which asserted the commission of an offense in California, the flight of appellant from the justice of that state, and the appellant's taking refuge in South Dakota. In *Kaufman,* in almost mirror facts of our case, the requisition application to the Governor of California for a rendition warrant to the Governor of South Dakota recited correctly that Kaufman, while in South Dakota, allegedly committed a crime (willful child desertion by reason of not sending support). However, the rendition warrant and supporting papers then issued to South Dakota incorrectly asserted the commission of the offense in California, the flight of appellant from California to South Dakota, and the appellant's taking refuge in South Dakota.

As in our case, South Dakota had one statute pertaining to people who had committed a crime in another state and then fled to South Dakota as a fugitive and a second statute patterned after Minn.Stat. § 629.06 (1982) that could have been properly used by the Governor of California, but was not. The South Dakota statute vesting in the Governor of South Dakota the power to surrender someone charged, not with fleeing to South Dakota, but with committing an act in South Dakota intentionally resulting in a crime in the demanding state, was deemed to vest in the South Dakota governor's discretion "and that the power granted by this section is to be exercised in those cases only which fall *clearly* within the provisions thereof." *Id.* 39 N.W.2d at 907 (emphasis added).

In *Kaufman,* the South Dakota Supreme Court considered the actions of a trial court which dissolved Kaufman's petition for

writ of habeas corpus and remanded him to the custody of an arresting officer to be transported to California. The South Dakota Supreme Court reversed and held that since petitioner was not a fugitive from justice, he could only be extradited pursuant to their statute authorizing discretionary extradition. The court held the rendition warrant, being incorrect on its face in its fact recital, was insufficient, granted the writ of habeas corpus and ordered the petitioner discharged from custody. The facts in *Kaufman* and the South Dakota statute interpreted in *Kaufman* are strikingly similar to Minnesota's. We find the legal reasoning and analysis in *Kaufman* persuasive.

Although our resolution of this issue is dispositive, we choose to address appellant's second claim, namely, that the extradition papers, even overlooking the technical defect, do not set out acts appellant has done in the State of Minnesota which constitute crimes in the State of New Mexico, but, rather, show that he is being improperly extradited, as the real purpose of the extradition is the collection of a private debt. In support of this claim, appellant cites *State ex rel. Nisbett v. Toole,* 69 Minn. 104, 72 N.W. 53 (1897). The case is old, but still good law. The opinion states in part:

> We all know as a matter of fact that governors do exercise a discretion in such cases, and if they are satisfied that the demand is made for some ulterior and improper purpose—as, for example, the collection of a private debt—they refuse to issue a warrant. If a governor may exercise such a discretion in regard to issuing the warrant, we do not see why he may not exercise the same discretion in regard to revoking it, * * *

*Id.* 69 Minn. at 107, 72 N.W. at 54.

■ The factual setting was different from the case at bar, as it involved a finding by our supreme court that the Minnesota governor has discretion both to refuse to issue and to revoke an extradition warrant filed for an improper purpose. However, the general proposition that extraditions should not be used for the collection of private debts is plainly stated.

It is not clear from the record that appellant committed an act in Minnesota intentionally resulting in a crime in New Mexico. The facts of the case, including the gunsmith's prior dealings with appellant leading to the decision to ship appellant the custom-made rifle before having received full payment, and the gunsmith's willingness to accept the rifle back twice for further work and then re-ship to appellant for approval, are almost conclusive that this matter involves an alleged unpaid civil debt.

The gunsmith claims that appellant initiated the request for personal inspection of the gun prior to final payment, but admits that from prior dealings with appellant he was willing to do that. There was a delay of only two months between Goens' shipping the rifle to Minnesota after the last repair and his going to the New Mexico district attorney to seek indictment and extradition. During those two months Goens claims he called appellant nine times and left messages which were not returned.

■ The gunsmith can only claim that there is an approximate $3,000 unpaid balance. New Mexico's charge of unlawful removal of encumbered property does not meet a threshold by Minnesota standards, as respondent admits that there never was a filed chattel mortgage or other type of recorded encumbrance on the rifle. The gunsmith willingly and knowingly shipped it with the balance due.

■ Although we do not countenance purchasers on open charge accounts dragging their feet before final payment, extradition of a citizen from his home state to a foreign state against his will is a most serious matter and cannot be done to disguise collecting a civil debt.

### DECISION

We reverse the trial court's order and we grant appellant's writ of habeas corpus.