LEE OWEN KOENIG, APPELLANT, V. RON POSKOCHIL, SHERIFF OF SAUNDERS COUNTY, NEBRASKA, APPELLEE.

469 N.W.2d 523

Filed May 10, 1991.    No. 90-140.

James Martin Davis for appellant.

Loren L. Lindahl, Saunders County Attorney, and Robert M. Spire, Attorney General, and William L. Howland for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Lee Owen Koenig, petitioner, appeals from an order of the Saunders County District Court, dismissing his request for release under a writ of habeas corpus directed to respondent, the sheriff of Saunders County, Nebraska. Koenig sought his release on the grounds that he was being detained under insufficient and invalid extradition documents. We reverse and order that petitioner be discharged from custody.

On May 15, 1989, a grand jury in Yankton County, South Dakota, indicted the petitioner on the following charges:

### COUNT I.

That on or about the 30th day of October, 1987, in the County of Yankton, State of South Dakota, LEE O. KOENIG did commit the public offense of CONSPIRACY TO MANUFACTURE, DISTRIBUTE, COUNTERFEIT OR POSSESS SUBSTANCES WITH POTENTIAL FOR ABUSE (SDCL 22-42-2) in that he did conspire to possess with intent to manufacture, distribute or dispense a substance listed in Schedule I or II, to-wit: Cocaine. (Class 4F)

### COUNT II.

That on or about the 2nd day of December, 1987, in the County of Yankton, State of South Dakota, LEE O. KOENIG did commit the public offense of CONSPIRACY TO MANUFACTURE, DISTRIBUTE, COUNTERFEIT OR POSSESS SUBSTANCES WITH POTENTIAL FOR ABUSE (SDCL 22-42-2) in that he did conspire to possess with intent to manufacture, distribute or dispense a substance listed in Schedule I or II, to-wit: Cocaine. (Class 4F)

A warrant was issued for petitioner's arrest. After it was

determined that the petitioner was located in Nebraska, the Yankton County state's attorney submitted a writ of extradition application directed to the Governor of South Dakota. The Governor of South Dakota signed a requisition addressed to the Governor of Nebraska, requesting extradition of the petitioner from Nebraska. Both documents, in addition to setting forth the charges in the indictment, stated that the petitioner was present in South Dakota on the two dates set out in the indictment and had committed the alleged crimes in that state, but had fled the state to Nebraska as a fugitive from justice. The Governor of Nebraska signed an extradition warrant for the petitioner's arrest, and the petitioner was taken into custody.

On September 20, 1989, petitioner filed his petition for a writ of habeas corpus in the district court for Saunders County, Nebraska. The petition stated that the extradition documents were insufficient because the petitioner was not in South Dakota on the dates in question, had not fled from South Dakota, and was not a fugitive from justice. On January 12, 1990, the district court for Saunders County dismissed the petition. Petitioner appeals from this dismissal.

The extradition of criminals is governed by the Uniform Criminal Extradition Act. Both South Dakota and Nebraska have adopted that act. The provisions of the act are codified in Nebraska at Neb. Rev. Stat. §§ 29-729 to 29-758 (Reissue 1989) and in South Dakota at S.D. Codified Laws Ann. §§ 23-24-1 to 23-24-39 (1988). Two sections of the act are particularly relevant to the present case.

Section 29-730 provides:

> Subject to the provisions of sections 29-729 to 29-758, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this state to have arrested and delivered up to the Executive Authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

Section 29-734 provides:

> The Governor of this state may also surrender, on demand of the Executive Authority of any other state, any

person in this state charged in such other state in the manner provided in section 29-731 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand, and the provisions of sections 29-729 to 29-758 not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.

The documents in this case do not state under which of these provisions petitioner's extradition was sought. The fact that petitioner is labeled a fugitive in the extradition documents, however, which documents also state that defendant "was present in [South Dakota] at the time of the commission of the crime and thereafter fled from [South Dakota]," makes it apparent that petitioner's extradition was sought pursuant to the terms of the Uniform Criminal Extradition Act set out in § 29-730.

Petitioner contends that the extradition documents are insufficient because those documents are incorrect in alleging that petitioner is a fugitive from justice. Petitioner and respondent stipulated that "the underlying transactions surrounding the extradition of Mr. Koenig [on] the dates in question, those being October 30, 1987, and December 2, 1987, took place in Hartington, Cedar County, Nebraska, and not in South Dakota." It is clear that the parties agree that petitioner committed certain acts in Nebraska, which acts allegedly resulted in a criminal conspiracy in South Dakota.

Initially, it must be noted that once the governor of the asylum state has granted extradition, matters which may be considered by courts of the asylum state upon an application for a writ of habeas corpus are very limited. *Radant v. Vargason*, 220 Neb. 116, 368 N.W.2d 483 (1985). This court has consistently applied the following rule enunciated by the U.S. Supreme Court in *Michigan v. Doran*, 439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978):

> A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. [Citation omitted.] Once the governor has granted extradition, a court considering

release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

See, *Radant, supra*; *Nash v. Miller*, 223 Neb. 605, 391 N.W.2d 143 (1986); *Scaggs v. Miller*, 221 Neb. 98, 375 N.W.2d 140 (1985).

Because petitioner challenges his alleged status as a fugitive, a court of the asylum state has jurisdiction to consider the issue. See, *State v. Smith*, 232 Kan. 128, 652 P.2d 703 (1982); *In re Rowe*, 67 Ohio St. 2d 115, 423 N.E.2d 167 (1981). We therefore consider whether identifying petitioner as a fugitive affects his rights.

This court has said that to be a fugitive one need only have left the demanding state after allegedly having committed a crime under the laws of that state. *Nash v. Miller, supra*; *Kujala v. Headley*, 193 Neb. 1, 225 N.W.2d 25 (1975); *Gorgen v. Tomjack*, 160 Neb. 457, 70 N.W.2d 514 (1955); *Finch v. West*, 106 Neb. 45, 182 N.W. 565 (1921).

We have also stated that "[o]rdinarily, in statutes relating to extradition the term 'fugitive from justice' has reference to one who has committed an offense in one state or jurisdiction and is afterwards found in another." *Colling v. State*, 116 Neb. 308, 310-11, 217 N.W. 87, 88 (1927). We have further stated that "the term 'fugitive from justice,' as used in statutes pertaining to extradition, applies when [the accused] has gone from the jurisdiction where the offense was committed." *Taylor v. State*, 138 Neb. 156, 161, 292 N.W. 233, 235 (1940).

It has been said:

> "When it is conceded, or when it is so conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding State, then the court will discharge the defendant. . . ."

*DeGenna v. Grasso*, 413 F. Supp. 427, 433 (D. Conn. 1976),

*aff'd sub nom., Carino v. Grasso*, 426 U.S. 913, 96 S. Ct. 2617, 49 L. Ed. 2d 368 (quoting from *Munsey v. Clough*, 196 U.S. 364, 25 S. Ct. 282, 49 L. Ed. 515 (1905)).

In *State of Kansas v. Holeb*, 188 Neb. 319, 322, 196 N.W.2d 387, 389 (1972), cited in respondent's brief, we stated:

> Historically, to be a fugitive from justice, one had to be in the state where the crime was committed at the time of its commission. Prior to the adoption of provisions contained in the Uniform Criminal Extradition Act, status as a fugitive was essential to extradition. This is no longer the case. One who commits an act in one state intentionally resulting in a crime in another state may now be extradited. See § 29-734, R.R.S. 1943. Although not within the formerly adhered to strict definition of a fugitive, one who thus seeks to evade the administration of justice in the state where the offense was perpetrated is, in essence, a fugitive from the justice of such state.

Respondent seems to suggest that one who commits an act in one state which intentionally results in a crime in another state becomes, "in essence, a fugitive." This is not an appropriate interpretation. What § 29-734 accomplishes is that it allows for extradition of persons charged with a crime who are not fugitives—it does not statutorily confer fugitive status on such persons. We affirm the proposition that to be deemed a fugitive, one must have been physically present in the demanding jurisdiction on the date when the crime is said to have been committed.

Respondent contends that it is irrelevant whether or not petitioner is labeled a fugitive, because in any event he committed an act which resulted in a crime in the demanding state. Respondent argues that whether or not petitioner is a fugitive, there is a statutory provision which authorizes his extradition.

It is true that the Uniform Criminal Extradition Act provides for extradition of petitioner, whether he is labeled a fugitive or not. However, the separate statutory provisions call for different standards for granting extradition by the governor of the asylum state. Section 29-730 states that it is the duty of the governor of the asylum state to turn over a fugitive to the

demanding state, that is, it is mandatory. This result is required by the extradition clause of the U.S. Constitution. See, U.S. Const. art. IV, § 2, cl. 2; *Wise v. State*, 197 Neb. 831, 251 N.W.2d 373 (1977).

By contrast, under § 29-734, the governor of the asylum state may surrender on demand any person charged with committing an act intentionally resulting in a crime in the demanding state, that is, it is discretionary. The governor of the asylum state is afforded discretion to accept or reject the demand in nonfugitive situations.

It is clear that petitioner's rights were prejudiced by the effect the mislabeling of his status as that of a fugitive had upon the power of the Governor of Nebraska to accept or reject the demand of extradition by South Dakota. Because it appeared on the face of the documents that petitioner was a fugitive, the governor of the asylum state had no choice but to honor the demand. Despite the fact that defendant could have been extradited under § 29-734, the fact is that extradition was sought under § 29-730. The misstatement as to his status as a fugitive in the extradition documents did not afford petitioner his right under the Uniform Criminal Extradition Act to have the question of whether he should be extradited from the asylum state properly determined by the governor of that state and, therefore, requires that he be dismissed from custody. See *Dutil v. Rice*, 34 Conn. Supp. 78, 376 A.2d 1119 (1977).

It should be noted that the Supreme Court of South Dakota has also held that one who was not present in the demanding state when crimes were said to have been committed there cannot be extradited as one who committed an act intentionally resulting in a crime in the demanding state if he is incorrectly named as a fugitive from that state in the extradition documents. *Ex parte Kaufman*, 73 S.D. 166, 39 N.W.2d 905 (1949). See, also, *In re Ropp*, 149 Vt. 269, 541 A.2d 86 (1988); *State v. Reinke*, 398 N.W.2d 53 (Minn. App. 1986); *State ex rel. Walker v. Ramsey Cty. Dist. Ct.*, 368 N.W.2d 28 (Minn. App. 1985).

This cause is remanded with directions to the district court to release petitioner from custody.

REVERSED AND REMANDED WITH DIRECTIONS.