### S94A1678. JENKINS v. GARRISON.
(453 SE2d 698)

BENHAM, Presiding Justice.

Petitioner, a Georgia resident, was charged in an indictment re-

---

turned in Alabama in December 1992 with 11 counts of misdemeanor distribution of obscene materials. Upon learning of her indictment, petitioner surrendered to respondent, the sheriff of Cherokee County, Georgia, and was released on bond. Thereafter, pursuant to a request for interstate rendition from the Governor of Alabama, the Governor of Georgia issued a warrant for petitioner's arrest and deliverance to the Alabama authorities. Petitioner sought and was denied a writ of habeas corpus by the superior court of Cherokee County and now seeks review of that decision.[1]

1. The extradition process has a constitutional foundation in Art. IV, Sec. 2, Cl. 2 of the U. S. Constitution[2] and statutory roots in the Uniform Criminal Extradition Act (UCEA) passed by the Georgia General Assembly in 1951. OCGA § 17-13-20 et seq.[3] The federal constitutional provision and the implementing state statutes (Sections 2 and 3 of the uniform act (OCGA §§ 17-13-22 and 17-13-23))[4] *require* the governor of the asylum state to have arrested and delivered to the governor of a requesting state a person charged with a crime in the requesting state who has fled from justice and been found in the asylum state. *Puerto Rico v. Branstad*, 483 U. S. 219, 227 (107 SC 2802, 97 LE2d 187) (1987). It is a "nondiscretionary exercise of executive

---

[1] The Governor of Alabama has twice previously been unsuccessful in his request for appellant's interstate rendition from Georgia on these charges. He withdrew his first request in the face of appellant's first petition for habeas corpus (March 1993), and the Governor's warrant issued pursuant to his second request was nullified by the grant of appellant's second petition for habeas corpus (January 1994). Before us now is the Governor's warrant issued on March 2, 1994, in response to the Alabama governor's latest request for interstate rendition of appellant.

[2] A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[3] Forty-seven states, including Alabama (Code 1975 § 15-9-20 et seq.), as well as Puerto Rico and the Virgin Islands, have enacted the UCEA. U.L.A., Vol. 11, 1994 Supplementary Pamphlet, p. 38. North Dakota has adopted the Uniform Extradition and Rendition Act (id. p. 181), and Mississippi and South Carolina have enacted neither.

[4] OCGA § 17-13-22 states:

Subject to this article, the Constitution of the United States, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this state to have arrested and delivered up to the executive authority of any other state any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

OCGA § 17-13-23 states:

No demand for the extradition of a person charged with a crime in another state shall be recognized by the Governor unless in writing, alleging, except in cases arising under Code Section 17-13-25, that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state, and accompanied by a copy of an indictment found . . . [which] substantially charge[s] the person demanded with having committed a crime under the law of the state; and the copy of the indictment . . . must be authenticated by the executive authority making the demand.

responsibility under a constitutional imperative." *State v. Sinacore*, 376 A2d 580, 583 (NJ 1977). A governor's refusal to perform this ministerial function may be remedied by an action for writ of mandamus. *Puerto Rico v. Branstad*, supra.

A request for rendition based on the constitutional provision and its implementing legislation is limited to the extradition of a fugitive from justice found in the asylum state. *Jackson v. Pittard*, 211 Ga. 427, 428 (86 SE2d 295) (1955); *McFarlin v. Shirley*, 209 Ga. 794, 798-799 (76 SE2d 1) (1953). A fugitive from justice is

> "a person who, having committed or been charged with a crime in one state, had left its jurisdiction and is found within the territory of another when it is sought to subject him to the criminal process of the former state."

*Anderson v. Roth*, 231 Ga. 369, 370 (202 SE2d 91) (1973). If a request for extradition is premised on the constitutional provision, one arrested and held on the governor's warrant issued in response to the request is entitled to habeas corpus relief upon establishing that he is not a fugitive from justice. *Jackson v. Pittard*, supra. See also *Rutledge v. Tolbert*, 240 Ga. 116 (239 SE2d 520) (1977).

2. Section 6 of the UCEA (OCGA § 17-13-25)[5] was designed to cover cases not clearly reached by the constitutionally-based extradition laws; that is, where the accused could not technically be called a fugitive because he had committed a crime against the laws of a demanding state by doing acts outside of that state. Uniform Criminal Extradition Act (U.L.A.), Commissioners' Prefatory Note. Section 6 permits the governor of an asylum state to surrender to the governor of a requesting state a non-fugitive — a person found in the asylum state who is accused by the requesting state of committing acts outside the boundaries of the requesting state that result in a crime in the requesting state. The effectiveness of Section 6 depends, not on a constitutional mandate, but upon comity between the states. Uniform Criminal Extradition Act (U.L.A.), Commissioners' Prefatory Note. When this provision is used as the basis for requesting interstate rendition of an accused, whether the accused was present in the requesting state at the time of the commission of the crime and fled there-

---

[5] OCGA § 17-13-25 states:
The Governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in Code Section § 17-13-23 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand and the provisions of this article not otherwise inconsistent shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom.

from are not at issue. *Haupt v. Mitchell*, 256 Ga. 844 (353 SE2d 345) (1987).[6]

3. Section 10 of the UCEA provides that the target of the extradition proceedings may test the legality of his detention by applying for a writ of habeas corpus. OCGA § 17-13-30 (a). Where a habeas corpus petitioner is being held under a governor's warrant based on an extradition proceeding, the warrant, if valid on its face raises the presumption that the governor complied with the Constitution and law, and the burden is on the petitioner to show a "valid and sufficient reason" why the warrant should not be executed. *Baldwin v. Grimes*, 216 Ga. 390 (116 SE2d 207) (1960). Once the governor of the asylum state has issued a warrant of rendition, a court considering a petition for a writ of habeas corpus is limited to determining four "readily verifiable" facts: whether the extradition documents on their face are in order; whether the petitioner has been charged with a crime in the demanding state; whether the petitioner is the person named in the request for extradition; and whether the petitioner is a fugitive. *Michigan v. Doran*, 439 U. S. 282, 289 (99 SC 530, 58 LE2d 521) (1978); *Johnson v. Mitchell*, 256 Ga. 339 (349 SE2d 186) (1986).

The basis of petitioner's habeas petition is her assertion that the warrant issued by the Georgia governor is invalid because both it and the Alabama governor's request for interstate rendition repeatedly refer to her as a "fugitive from justice" despite the fact that the State of Alabama has never contended that she committed the offenses in Alabama and then fled. The Alabama governor's request for interstate rendition of petitioner invoked the federal constitution and federal laws and averred that petitioner had committed the crimes in Alabama and had then fled to Georgia. The warrant issued by the Georgia governor acknowledged receipt of the Alabama governor's demand and supporting documents that charged petitioner with having com-

---

[6] Several opinions issued by this court have led some to conclude that whether the accused was in the demanding state at the time of the commission of the crime is not recognized in any extradition habeas corpus proceeding in Georgia as a viable issue. These opinions generally cite *Michigan v. Doran*, 439 U. S. 282 (99 SC 530, 58 LE2d 521) (1978). In *Doran*, the U. S. Supreme Court held that the courts of an asylum state could not nullify the governor's grant of extradition on the ground that the requesting state had not established a factual basis for its charges supported by probable cause. Many of the Georgia opinions do not reflect the basis, constitutional or statutory, of the issuance of the governor's warrant. We can only conclude that the Georgia cases involve warrants issued pursuant to OCGA § 17-13-25 and its predecessor, Ga. Code Ann. § 44-407, where the issue of presence within the demanding state is not an issue, or involved situations where a petitioner alleged that the demanding state had not presented sufficient evidence to establish probable cause to believe he was in the demanding state at the time of the commission of the crime. See, e.g., *Willard v. Hutson*, 247 Ga. 430 (276 SE2d 611) (1981); *Miller v. State*, 245 Ga. 137 (263 SE2d 441) (1980); *Hutson v. Stoner*, 244 Ga. 52 (257 SE2d 539) (1979); *Larsen v. State*, 244 Ga. 767 (262 SE2d 97) (1979); *Frazier v. Rutledge*, 243 Ga. 39 (252 SE2d 465) (1979); *Smith v. Hart*, 243 Ga. 59 (252 SE2d 470) (1979).

mitted the crimes in Alabama, and referred to petitioner six times as a "fugitive from justice" in ordering her arrest and deliverance to the Alabama governor's designated agent. The governor's warrant did not give either a constitutional or statutory basis for its issuance. Compare *Mitchum v. Stynchcombe*, 227 Ga. 226 (179 SE2d 919) (1971); *Johnstone v. Deyton*, 233 Ga. 146 (210 SE2d 692) (1974); *Watson v. Grimes*, 218 Ga. 631 (129 SE2d 795) (1963); *Jackson v. Pittard*, supra.[7]

The discrepancy between the governor's warrant asserting that petitioner is a fugitive from justice (and therefore was present in Alabama when the crimes were committed) and the stipulation that Alabama is not contending that petitioner was in Alabama when the crimes were committed requires examination of the documents submitted in support of the request for rendition in an effort to establish the validity of the issuance of the warrant. See *Mitchell v. Dodd*, 238 Ga. 638 (1) (235 SE2d 15) (1977); *Watson v. Grimes*, supra. See also *Cronauer v. State*, 322 SE2d 862, 868 (W.Va. 1984); *State v. Soto*, 423 S2d 362 (Fla. 1982).[8] Submitted to the governor of Georgia with the request for rendition of petitioner was the indictment charging her with knowingly distributing, possessing with intent to distribute, or offering or agreeing to distribute obscene material, in violation of Alabama law.[9] The application for extradition submitted to the Alabama governor by an Alabama district attorney asserted that the crimes were alleged to have been committed in Birmingham, Alabama, and that petitioner was a fugitive from justice believed to be in Georgia. Despite this assertion, the applicant struck through the portion of the pre-printed form which asserted petitioner had been in Alabama at the time of the commission of the crimes and made reference to the affidavit of an Alabama deputy attorney general who asserted that Alabama was not alleging that petitioner was in Alabama when the crimes allegedly occurred, but was the person responsible for the distribution of obscene material in Alabama.[10] As was stated earlier, the

---

[7] Petitioner's habeas corpus petition to the second governor's warrant was granted on this ground. That habeas court found "a significant factual distinction" between the Alabama governor's extradition request couched in the mandatory language of the constitutional provision and OCGA §§ 17-13-22 and 17-13-23, and the parties' stipulation wherein the State of Alabama said it did not contend that petitioner violated the laws of Alabama while in that state.

[8] In order to effectuate the uniform act's general purpose "to make uniform the laws of those states which enact it[,]" (OCGA § 17-13-49), judicial decisions from other states interpreting their codification of the uniform law are "particularly persuasive." *State of Ga. v. McKenna*, 253 Ga. 6, 9 (315 SE2d 885) (1984).

[9] The indictment's failure to allege the place where the illegal conduct occurred does not void the extradition. *State v. Soto*, supra, 423 S2d 362.

[10] In *State ex rel. Walker v. Ramsey County Dist. Court*, 368 NW2d 28 (Minn. App. 1985), the Minnesota Court of Appeals held that statements made in the application for

Alabama governor's request for rendition asserted that petitioner was a fugitive from justice who had taken refuge in Georgia, and "pursuant to the provisions of the Constitution and the Laws of the United States . . . ," requested her apprehension and deliverance to Alabama authorities.

In its order denying relief, the habeas court acknowledged that the extradition pleadings contained "various defects." Relying on the presumption that the governor knew the law, the habeas court concluded that the governor had acted lawfully and exercised his discretion in issuing the warrant. We do not disturb the habeas court's findings of fact as they are supported by evidence; however, we must reverse the conclusion drawn therefrom as it is not based on sound legal footing.

Whether the Georgia governor exercised his discretion in issuing the rendition warrant is the critical question in this case. When a rendition warrant is issued pursuant to the constitutional mandate (i.e., that the accused committed the crime in the demanding state and fled therefrom) in response to another state's request based on Section 6 of the UCEA (i.e., the accused is asserted to have committed acts outside the demanding state that intentionally result in a crime within the demanding state), or when it is established that the accused was not in the demanding state at the time of the commission of the crime, habeas corpus relief is granted because the accused has been denied the exercise of gubernatorial discretion to which he is entitled. *Ex parte Holden*, 719 SW2d 678 (Tx. App. 1986); *Dutil v. Rice*, 376 A2d 1119 (Conn. 1977); *Koenig v. Poskochil*, 469 NW2d 523 (Neb. 1991); *Ex parte Kaufman*, 39 NW2d 905 (S.D 1949). See also *Watson v. Grimes*, supra, 218 Ga. 631, and *Jackson v. Pittard*, supra, 211 Ga. 427. Thus, it is of paramount importance to the validity of a rendition warrant issued pursuant to a governor's discretionary authority that there be evidence that gubernatorial discretion was in fact exercised. See, e.g., *Ratliff v. Thomas*, 652 SW2d 919 (Tn. Crim. App. 1983) (case wherein Alabama governor's request for rendition under UCEA Section 6 was honored by Tennessee governor's issuance of a rendition warrant); *State ex rel. Bradford v. Thomas*, 653 SW2d 755 (Tn. Crim. App. 1983) (case wherein Georgia governor's request for rendition based on Section 6 was honored by Tennessee governor's issuance of a rendition warrant).

The presumption that a public officer acted properly in the performance of his duty is rebutted when the contrary appears. *Brantley v. Thompson*, 216 Ga. 164 (115 SE2d 533) (1960). The language of the

---

request for rendition to the effect that the accused was not a fugitive did not save the rendition warrant when both it and the request for rendition incorrectly stated that the accused was a fugitive.

rendition warrant makes it clear that the Georgia governor issued it with the understanding that petitioner had committed a crime in Alabama and fled therefrom. The rendition warrant's repeated descriptions of petitioner as a fugitive and the Governor's assertion that the Alabama governor's request was accompanied by documents charging petitioner with a crime committed in Alabama make it apparent that the warrant was issued pursuant to the mandatory terms of the U. S. Constitution and OCGA § 17-13-23. See *Koenig v. Poskochil*, supra, 469 NW2d 523. In light of the stipulation that petitioner had not committed a crime while in Alabama, petitioner's application for habeas corpus relief should have been granted. *Watson v. Grimes*, supra, 218 Ga. 631.

4. Petitioner also contends the rendition warrant was not authorized inasmuch as she was not "substantially charged" by the demanding state because the Alabama indictment did not allege the date on which the offenses were alleged to have been committed and did not allege the method in which the offense was committed.

> [I]n cases involving extradition, it is a question of law open to judicial inquiry on habeas corpus, as to whether the person demanded was substantially charged with a crime against the laws of the demanding State. [Cits.] But the rule as thus stated applies to the sufficiency of the indictment or affidavit as a pleading, and not to extraneous evidence as to actual guilt.

*Ellis v. Grimes*, 198 Ga. 51, 54 (30 SE2d 921) (1944). A dateless indictment is valid under Alabama law unless time is "a material ingredient of the offense." Section 15-8-30, Code 1975. Petitioner has made no suggestion that the crime of distribution of obscene material is a crime that falls within the statutory exception.[11] The indictment contains several methods by which petitioner is alleged to have committed the crimes. The validity of the indictment is for the courts of the demanding state as it does not fall within the limited scope of review permitted the habeas courts of the asylum state.

5. Whether the videotapes allegedly possessed and distributed by petitioner are obscene under Georgia's community standard and whether Alabama's prosecution of petitioner is pre-empted by federal

---

[11] For extradition purposes, an accused who is alleged to be a fugitive from justice and who wishes to challenge that allegation is entitled to a date in order to establish whether he was in the demanding state at that time. In light of the stipulation that petitioner was not in Alabama when the offenses were allegedly committed, she is not in need of the dates on which the crimes were alleged to have been committed. Had she been in need of such, the date asserted in the application for request for rendition (February 26, 1992) would have sufficed.

laws criminalizing the interstate transportation and operation of obscene publications and businesses are also matters that do not fall within the limited scope of habeas corpus review of petitioner's detention pursuant to a governor's rendition warrant. *Michigan v. Doran,* supra.

*Judgment reversed. All the Justices concur, except Hunt, C. J., who concurs in the judgment only.*

DECIDED FEBRUARY 20, 1995.

*Maloy & Jenkins, W. Bruce Maloy,* for appellant.
*Garry T. Moss, District Attorney,* for appellee.