A00A0379. SEXTON v. CLAYTON COUNTY TAX DIGEST.
(529 SE2d 149)

ELDRIDGE, Judge.
The issue presented for determination comes under OCGA § 48-5-310, i.e., when temporary ad valorem taxes are ordered collected by a superior court because the county tax digest has not been approved by the State Revenue Commissioner, should the trial court use a millage rate that will produce revenue exceeding the adopted budget

when applied to the unapproved tax digest that is approximately $493,000,000 in excess of the 1998 digest. The answer is no, because only the millage rate necessary to satisfy the adopted budget would be lawful; therefore, the millage rate shall be appropriately adjusted by the trial court to meet the budget. See *Container Corp. of America v. Charlton County*, 259 Ga. 389, 392-393 (383 SE2d 105) (1989). Thus, as a matter of law, the use of such excessive millage rate constitutes plain error and an abuse of discretion by the trial court.

On August 18, 1999, the Board of Commissioners of Clayton County brought a petition in the Superior Court of Clayton County under OCGA § 48-5-310 for permission to temporarily collect taxes, because the 1999 tax digest could not be approved by the State Revenue Commissioner where more than three percent of the total taxable tangible digest of the county was on appeal. The trial court ordered the matter set for hearing after notice by publication on August 30, 1999, at 8:30 a.m. The City of College Park sought to intervene, because the tax digest also affected its tax collections.

A hearing was held on August 30, 1999, at which Lee Sexton, pro se, and other intervenors appeared, presented evidence, and were heard. The intervenors stipulated that there existed a need for temporary collection of taxes in some amount; however, they objected to the method devised by the county for setting the 1999 millage rate based on an unapproved 1999 tax digest that would produce a revenue surplus in excess of the adopted 1999 budget. The total projected general revenue from all revenues and fire districts amounted to $104,952,866. The budget amounted to $91,366,498. Thus, when 95 percent of collections of ad valorem taxes was applied to the ad valorem taxes potentially generated from the 1999 tax digest, there would be a budget surplus of approximately $5,952,312, if the appeals caused no reduction in the 1999 tax digest. The 1998 tax digest was $4,507,118,236, while the 1999 tax digest was $5,000,961,941.

The senior commercial appraiser for the county testified that the only difference between the 1997 tax digest and the disputed 1999 tax digest was transfer of property, subdivision of property, demolition of structures, and new businesses (the 1998 tax digest had not been audited); however, this amounted to a difference of $493,000,000 for all property subject to assessment. The appraiser contended that the use of the contested 1999 tax digest was appropriate for collection of the temporary taxes. The finance director prepared the county budget based upon the 1999 tax digest, local option sales taxes, interest income, court-imposed fines, service charges, and intergovernment grants. The 1999 ad valorem tax millage rate adopted by the county commissioners was 4.11 for general purposes and 4.74 for the fire districts, which was the same millage rate as set

for 1998. The county asked the trial court to apply such 1999 adopted millage rate to the 1999 tax digest to collect temporary taxes to meet the 1999 budget. When a temporary tax is imposed under court order, it does not have to be advertised with the budget and millage rate. The temporary taxes at the 1999 millage rate based upon the greater contested 1999 tax digest would, with all other revenue, produce $5,952,312 in excess of ad valorem tax revenue of the 1999 budget for revenue from property without taking into consideration the reduction of the 1999 tax digest from successful taxpayer appeals.

The trial court granted the right to temporarily collect taxes based on the 1999 millage rate and the greater 1999 tax digest to meet the 1999 budget by order dated August 31, 1999, but filed on September 1, 1999. On September 10, 1999, taxpayer Sexton, acting pro se, as a taxpayer appealed the order of August 31, 1999. On September 16, 1999, Clayton County sought an order to modify the order dated August 31, 1999, to prevent the automatic supersedeas effect of Sexton's notice of appeal. A rule nisi hearing was held on September 21, 1999. On September 22, 1999, the trial court by written communication indicated that the trial court no longer had jurisdiction to amend the order of September 1, 1999. The matter was docketed in this Court on October 4, 1999. *Held*:

The sole enumeration of error is that "[t]he Trial Court erred in granting the Order for Immediate and Temporary Collection of Taxes."

The superior court has the power to determine how temporary taxes shall be levied and collected under OCGA § 48-5-310 (f), including the power to set the millage rate. *Bd. of Commrs. of Fulton County v. 1991 Tax Digest for Fulton County*, 261 Ga. 702 (410 SE2d 721) (1991); see also *In re Bd. of Twiggs County Commrs.*, 249 Ga. 642 (292 SE2d 673) (1982). In this case, the trial court directed that collection be made under OCGA § 48-5-310 (f) (1), based upon the rejected greater 1999 tax digest, using the 1999 millage rate. However, the trial court went further and ordered that the 1999 millage rate adopted by the Clayton County Board of Commissioners be applied without adjustment for the potentially greater digest or possible revenue surplus in excess of the adopted 1999 budget.

"Since the word 'taxation' includes a determination of the rate of levy and the imposition of the levy, an essential part of the sovereign power and process [cits.], it follows that property will not ordinarily be deemed as taxed until the tax has been levied." *Rayle Elec. Membership Corp. v. Cook*, 195 Ga. 734, 735 (3) (25 SE2d 574) (1943). Thus, the Clayton County Board of Commissioners, as the governing authority, shall compute the millage rate necessary to produce revenue from taxation of all ad valorem property on the digest, real and

personal, when combined with other revenues reasonably expected to be received during the year which would provide revenues sufficient to defray the expenses and purposes of the county for the year after adopting a budget. 1983 Ga. Const., Art. IX, Sec. IV, Par. I (a); Art. IX, Sec. IV, Par. II; OCGA §§ 36-5-22.1 (a) (2); 36-81-1 et seq.; 48-5-32 (b), (c); 48-5-32.1 (a) (3); 48-5-273; 48-8-91 (a); *Container Corp. of America v. Charlton County*, supra at 392; *In re Bd. of Twiggs County Commrs.*, supra at 644. "It being the duty of the commissioner[s] to fix a rate for taxation that would produce sufficient funds to defray the county expenses for the year, [they] had authority to [set the tax millage rate]." *Bang v. Williams*, 211 Ga. 921, 923 (89 SE2d 639) (1955). See also OCGA §§ 36-81-5 (b); 36-81-6. "[T]he county would have accordingly set a millage rate which would have yielded an amount of money necessary to meet its budget." *Container Corp. of America v. Charlton County*, supra at 392. See also OCGA §§ 36-81-5; 36-81-6. The millage rate as set by the county commissioners must rise or fall when applied to the tax digest used to levy taxes to meet the adopted budget so as to avoid intentionally creating a surplus. Id. at 392-393. Thus, when the annual tax digest and budget are established and adopted, the county commissioners must set the millage rate to meet but not exceed the adopted budget. Id. See also OCGA §§ 36-81-5; 36-81-6.

> While county commissioners cannot expend money beyond the specified purposes enumerated in the Constitution, a large discretion is vested in the county commissioners in the expenditure of public money within the specified purposes enumerated in the Constitution. *Humber v. Dixon*, 147 Ga. 480 (2) (94 SE 565) [(1917)]. This court will not interfere with the discretionary action of the county commissioners within the sphere of their legally delegated powers, unless such action amounts to an abuse of discretion. *Dyer v. Martin*, 132 Ga. 445 (3) (64 SE 475) [(1909)].

*Whatley v. Taylor County*, 224 Ga. 669, 670 (164 SE2d 121) (1968). The county commissioners have the discretionary authority to establish a budget and to set the millage rate, with which a court cannot interfere, absent an abuse of discretion. See OCGA §§ 36-81-5; 36-81-6. However, the commissioners have no authority to set a millage rate that is intended to create a surplus in excess of budgeted purposes. See generally OCGA §§ 36-81-5; 36-81-6.

The power and authority to set a millage rate for ad valorem taxes and levy taxes by the county commission extend only to revenues sufficient to satisfy the budget and not to intentionally create a surplus of revenue beyond that necessary to pay expenses and carry

out the budgeted public purposes. OCGA §§ 36-5-22.1 (a) (2); 48-5-32 (b) (2), (c); 48-8-91 (a); *Container Corp. of America v. Charlton County*, supra at 392-393.

Where there existed evidence before the trial court that, when the millage rate adopted by the commissioners for 1999 was applied to the rejected 1999 tax digest, a revenue surplus would be produced in excess of the adopted budget, the trial court erroneously authorized the commissioners to do indirectly what they had no power or authority to do directly, i.e., amass a surplus in excess of the budget. See generally OCGA §§ 36-81-5; 36-81-6. Under OCGA § 48-5-310, the county commissioners had the burden of proof, not only as to the condition precedent for the trial court's exercise of its jurisdiction to order a temporary collection of taxes, but also as to establish a legal millage rate sufficient to meet the current adopted budget so that the trial court could exercise its sound and informed discretion to "establish the basis on which the temporary tax on each parcel of property shall be established and the manner in which the taxes shall be billed, collected, and otherwise received." OCGA § 48-5-310 (f). Absent such showing, the trial court has the discretion to set the millage rate itself based upon the best information available, i.e., prior digests and millage rates. However, the trial court does not have an unfettered discretion to pull a millage rate out of thin air without some basis in fact in relation to the adopted budget. OCGA § 48-5-310; *In re Bd. of Twiggs County Commrs.*, supra at 644. The county initially met such burden by presenting evidence of the 1999 adopted millage rate and budget, because the presumption arises that the commissioners did their duty in passing a lawful millage rate based upon a legal budget and not to have exceeded their authority, until shown to the contrary. *McDowell v. Judges Ex Officio*, 235 Ga. 364 (219 SE2d 713) (1975); *Allen v. Thomas*, 225 Ga. 650, 652 (171 SE2d 132) (1969); *Fine v. Dade County*, 198 Ga. 655, 662 (32 SE2d 246) (1944). See generally OCGA § 36-81-1 et seq. However, when evidence is introduced that challenges the correctness of the millage rate and the evidence shows without dispute that the duty was not performed, the presumption has been rebutted, and the undisputed evidence controls. *Todd v. State*, 205 Ga. 363, 365-366 (1) (53 SE2d 906) (1949).

Here, the intervenors' evidence overcame the presumption of correctness of such adopted 1999 millage rate by showing that the millage rate, when applied to the greater 1999 tax digest, would produce a surplus of revenue over the 1999 budget. The county argues that such 1999 tax digest had the potential to change through tax assessment appeals, particularly Delta Air Lines' appeal; the millage rate adopted must be based upon the face amount of the digest and not upon any changes that may arise from appeal. See *Container Corp. of*

*America v. Charlton County*, supra at 392-393. When too many appeals exist in a digest to make the total tax revenue uncertain to satisfy the adopted budget, it is for such reason that the State Revenue Commissioner must reject the tax digest. It is to avoid such problems that the trial court has three possible bases for collecting temporary taxes. OCGA § 48-5-310 (f).

The evidence presented placed in direct conflict the validity of the millage rate, because the millage rate would produce revenue in excess of the adopted budget. See generally *Jenkins v. Garrison*, 265 Ga. 42, 47-48 (3) (453 SE2d 698) (1995); *Coleman v. Montgomery County*, 228 Ga. App. 276, 278 (491 SE2d 495) (1997). The county put up no further evidence to rebut that the millage rate would produce a revenue surplus or even show a revenue shortfall to meet the budget. All the county showed on cross-examination was that the 1999 digest could potentially change downward on appeal, producing less ad valorem revenue; this meant that the legality of the 1999 millage rate applied to the larger 1999 digest would be illegal as applied as a temporary basis to collect taxes, unless the contingency occurred that the digest changed substantially through appeal. This was the reason that the Revenue Commissioner rejected the tax digest in the first place. The trial court, thus, abused its discretion by using the larger 1999 tax digest with the 1999 millage rate (the same as the 1998 millage rate) to meet the 1999 budget when such procedure would produce an impermissible revenue surplus. *In re Bd. of Twiggs County Commrs.*, supra. Thus, the trial court abused its discretion in the selection of the basis upon which to apply the temporary tax, absent sufficient evidence from the county that such millage rate did not exceed the budgeted needs and purposes of the county.

Therefore, the trial court's order is vacated, and the matter is remanded for further determination by the trial court as to whether or not the 1999 millage rate adopted by the county is appropriate when applied to the larger 1999 tax digest to meet, but not exceed, the 1999 adopted budget. On remand, to the extent that the person's temporary taxes already billed and collected equals the taxes personally collected for 1998 based upon the 1998 tax digest, 1998 millage rate, and the 1998 budget or that pro rata portion of the temporary tax collected which equals the person's 1998 taxes, such temporary taxes constitute prima facie a proper collectible temporary tax that does not exceed the 1999 budget, because the 1998 tax digest, millage, and budget have not been challenged. See generally *In re Bd. of Twiggs County Commrs.*, supra. Thus, the county may keep and use such amount of temporary taxes collected that does not exceed the 1998 taxes for purposes of meeting the 1999 budget without further determination. The trial court's use of OCGA § 48-5-310 (f) (1) must be reexamined to the extent that the temporary taxes billed persons

exceed the 1998 taxes billed such persons in order for the county to retain the excess 1999 taxes collected over the 1998 taxes, and evidence at a hearing must be presented to show that the 1999 millage rate and the 1999 tax digest will not illegally produce revenue in excess of the 1999 budget. However, evidence that the millage rate employed would produce a revenue deficit when applied to the larger 1999 tax digest would also prove that the 1999 millage rate was valid. Further, the trial court may choose to use another basis under OCGA § 48-5-310 (f) (2) or (3) to collect temporary taxes rather than determine if OCGA § 48-5-310 (f) (1) produces an ad valorem revenue surplus over the budget.

*Judgment vacated and remanded with instructions. Blackburn, P. J., and Barnes, J., concur.*

ON MOTION FOR RECONSIDERATION.

The Commissioners of Clayton County, as part of their normal or emergency budget, could have created a contingency fund so that if revenue collections based upon the tax digest and millage rate fell below the budget, i.e., taxes not paid, tax appeals go for the taxpayers, or Delta Air Lines won or partially won its tax appeals, there would be funds to meet such shortfall; however, to do this, the commissioners would have potential political reactions from taxpayers complaining that more revenue was budgeted than was needed to pay for actual as opposed to contingent expenses. OCGA §§ 36-81-3 (b) (1), (3); 36-81-5 (b), (d), (e), (f); 36-81-6. While the county must have a balanced budget as defined in OCGA § 36-81-3 (b) (1), (3), it cannot tax a tax digest and discount it for contingencies unbudgeted and set the millage rate based upon such reduced tax digest and ad valorem tax projections. The contingencies must be budgeted. While OCGA § 48-5-381 allows a "reserve fund" to be created for deferred programs, unexpected revenue, grants, or greater sales tax receipts, this does not permit the commissioners to set a millage rate greater than is necessary to satisfy the budget based upon the tax digest and all other revenue and thereby create an unbudgeted surplus. None of the cases cited by the county permits such levy practices.

DECIDED JANUARY 31, 2000 —
RECONSIDERATION DENIED FEBRUARY 21, 2000 —

*Lee Sexton,* pro se.
*Thurbert E. Baker, Attorney General, Hancock & Echols, Jack R. Hancock, Brian R. Dempsey, Donald M. Comer II, Laurel E. Henderson,* for appellee.

*Kilpatrick Stockton, Earle R. Taylor III, Alston & Bird, Kenneth B. Pollock,* amici curiae.